[Cite as *Columbus v. Galli*, 2013-Ohio-5325.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 12AP-864 |
| | | (M.C. No. 2009 EVH 60290) |
| Stephen F. Galli, | : | |
| Defendant-Appellant, | : | (REGULAR CALENDAR) |
| M & M Auto Shop et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 5, 2013

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Kristen M. Kroflich*, for appellee.

*Olsheski Law Co., L.P.A.*, and *Jessica L. Olsheski*, for appellant.

APPEAL from the Franklin County Municipal Court

McCORMAC, J.

{¶ 1} Defendant-appellant, Stephen F. Galli, appeals from a judgment of the Franklin County Municipal Court, Environmental Division, granting the motion for summary judgment filed by plaintiff-appellee, the City of Columbus ("City"), and denying Galli's motion for summary judgment on the City's complaint for injunctive relief and a declaration of public nuisance.

## I. Facts and Procedural History

{¶ 2} Galli is the property owner of record and landlord for real property located at 1440 Ohlen Avenue in Columbus, Ohio. Galli currently rents the property to Ayegbusi

for the operation of his businesses, M & M Auto Shop and M & M Shipping and Travel, LLC.  The property, located in an "M" commercial manufacturing zoning district, contains a commercial warehouse structure and an adjoining gravel lot.  An occupancy permit Galli obtained in 1978 permits the property's use as a "warehouse & office building."  (R. 14, exhibit D.)

{¶ 3}   On April 30, 2007, Columbus City Code Enforcement Officer Jeffrey Hann inspected the property, and on May 1, 2007, he issued a Zoning Code Violation Order ("2007 Order") to Galli and his tenant at that time.  There is an unresolved dispute as to whether the tenant was then Ayegbusi or M & M Auto Shop.  The 2007 Order alleged that Galli and his tenant violated Columbus City Code ("C.C.C.") 3305.01, which prohibits a change in use of property without a certificate of zoning clearance.  Galli appealed the violations to the Board of Zoning Adjustments ("Board"), but the Board upheld the 2007 Order's findings at a September 25, 2007 hearing.  Galli did not seek judicial review of the Board's decision.

{¶ 4}   On July 29, 2009, the City filed a verified complaint against Galli and M & M Auto Shop seeking a permanent injunction and a declaration that the property constituted a public nuisance on the ground that the property "remained in violation of [C.C.C. 3305.01]." (R. 1, at 3.) On September 9, 2009, Galli and Ayegbusi (referred to collectively in the following discussion as "Galli") filed an answer and counterclaim seeking to enjoin the City from filing any additional claims alleging zoning code violations.  The City did not file an answer to Galli's counterclaim.

{¶ 5}   Galli and the City filed competing motions for summary judgment on January 21 and February 19, 2010, respectively; Galli responded to the City's motion with a memorandum contra on March 8, 2010.  Pursuant to the parties' agreement for a decision on the written motions, on August 30, 2012, the municipal court magistrate rendered a decision finding the City was entitled to an injunction and declaration of public nuisance.  Consequently, the magistrate recommended that the court grant the City's motion for summary judgment and deny Galli's motion for summary judgment; the magistrate further recommended that the court grant summary judgment to the City on Galli's counterclaim for injunctive relief.  On September 4, 2012, the trial court approved and adopted the magistrate's decision as the order of the court, thereby declaring the

property a public nuisance and enjoining Galli from continuing to use the property in the manner alleged by the City.

## II. Assignments of Error

{¶ 6} Galli timely appeals the trial court's judgment and sets forth two assignments error for review:

> I. The trial court erred in denying Appellant's Motion for Summary Judgment on the issue of whether the Property owner and tenant are operating a junkyard or salvage yard without proper zoning clearance.
>
> II. The trial court erred in granting the City's Motion for Summary Judgment on all points.

As Galli's assignments of error are interrelated, we address them jointly.

## III. Standard of Review - Summary Judgment

{¶ 7} Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). The party seeking summary judgment bears the initial burden of setting forth the basis for its motion and identifying those portions of the record which "demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant fails to meet this burden, summary judgment is not appropriate. *Id.* If the movant does meet this burden, the nonmoving party must then produce competent evidence showing that there is a genuine issue for trial; summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id.* at 293. We review a trial court's decision regarding a summary judgment motion de novo, meaning we conduct an independent review of the record and afford no deference to the trial court's decision. *Cashlink, L.L.C. v. Mosin, Inc.*, 10th Dist. No. 12AP-395, 2012-Ohio-5906, ¶ 14; *Holt v. State,* 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9.

## IV. First and Second Assignments of Error - Injunctive Relief

{¶ 8}   Both Galli's assignments of error challenge the trial court's resolution of the parties' competing motions for summary judgment.  Specifically, Galli argues the trial court erred in granting the City's motion for summary judgment on its request for a permanent injunction and a declaration that the property is a public nuisance and in denying his own motion for summary judgment as to "the specific issue of [his] alleged use of the Property as a junkyard." (Appellant's brief, at vi.)

{¶ 9}   Although Ohio appellate courts typically apply an abuse of discretion standard to a trial court's determination on whether to issue injunctive relief, when a matter "is before [the court] on both a grant of summary judgment and permanent injunction" courts "proceed on the side of caution and review [the] matter de novo." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 12th Dist. No. CA2005-03-009, 2006-Ohio-1002, ¶ 26, *rev'd on other grounds*, in *Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 115 Ohio St.3d 375, 2007-Ohio-5024, *certiorari denied*, 552 U.S. 1275.

{¶ 10} A party seeking a permanent injunction must demonstrate by clear and convincing evidence that " 'they are entitled to relief under applicable statutory law.' " *McDowell v. Gahanna*, 10th Dist. No. 08AP-1041, 2009-Ohio-6768, ¶ 9, quoting *Acacia on the Green Condominium Assoc., Inc. v. Gottlieb*, 8th Dist. No. 92145, 2009-Ohio-4878, ¶ 18, citing *Proctor & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 268 (1st Dist.2000). Notably, while ordinarily that party also must establish great or irreparable injury is about to be done for which he has no adequate remedy at law, these equitable principles do not apply "when a statute grants a specific injunctive remedy to an individual or to the state." *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 56 (1978), citing *Stephan v. Daniels,* 27 Ohio St. 527, 536 (1875). The City sought a permanent injunction, pursuant to R.C. 713.13, which is one such "special statute allowing the municipal corporation to obtain an injunction without showing irreparable harm would be incurred for which there is no adequate remedy at law," as it permits the City to "institute a suit for injunction to prevent or terminate" any use of land that is in violation of the zoning code. *Columbiana v. J & J Car Wash, Inc.*, 7th Dist. No. 04 CO 20, 2005-Ohio-1336, ¶ 19; R.C. 713.13.  Accordingly, the traditional equitable principles for granting injunctions do not apply to the City's request for injunctive relief;

nevertheless, the City still must prove that "the statutory conditions exist." *Ackerman* at 58.

{¶ 11} In its complaint, the City alleged it is entitled to injunctive relief, pursuant to R.C. 713.13, because Galli's use of the property is in violation of C.C.C. 3305.01 requirement that a certificate of zoning clearance be obtained before a property's use can be changed. *See also* C.C.C. 3303.03 (defining "[c]hange of use" as "any alteration in the primary use of a lot for zoning purposes which may entail the need for additional parking or loading facilities"). Furthermore, the City asserted the property constitutes a public nuisance due to this alleged violation of C.C.C. 3305.01 because the term "[p]ublic nuisance" encompasses, pursuant to the zoning code, "any structure or real property which is not in compliance with any building, housing, [or] zoning * * * ordinance of the Columbus City Code." C.C.C. 3303.16. Therefore, the appropriateness of the grant of summary judgment to the City turns on whether the record contains sufficient, uncontroverted evidence to establish that Galli's use of the property violates C.C.C. 3305.01.

A. *City's Motion for Summary Judgment*

{¶ 12} In its motion for summary judgment, the City maintained that summary judgment in its favor was appropriate because it had demonstrated not only that Galli was responsible for the "violations of the Columbus City Code * * * § 3305.01" established by the Board decision upholding the 2007 Order but, also, that the violations continue to exist since Galli has not "corrected the violations listed in the Order." (R. 13, at 1.)

{¶ 13} To establish the initial violation, the City produced the Board decision upholding the 2007 Order pursuant to the Board's finding that, while the property's "legal approved use is [as] a two-story warehouse and office building," there had been an unapproved change of use because "[a]uto services, used sales, storing of wrecked, salvaged, and inoperable vehicles, and storage of junk are actually occurring on the site"; in addition, the board found "[t]here are unimproved surfaces which are pertinent to the use, which have * * * not received zoning clearance." (R. 13, exhibit K.) The City also submitted the violation notice for the 2007 Order, which indicated the City sent copies of the Order to Ayegbusi and M & M Auto Shop at the subject address and Galli at a separate address on May 1, 2007.

{¶ 14} In addition, the City contended "that Defendant has not complied with the Order enforcing the laws of the City of Columbus" in the time since issuance of the 2007 Order. (R. 13, at 5.) Specifically, the City alleged in its complaint that "[o]n December 10, 2007, Code Officer Hann re-inspected the property and found that the violations listed in [the 2007 Order] still existed," and again "[o]n April 30, 2009, Code Officer Hann re-inspected the property and the property remained in violation of the zoning code." (R. 1, at 3.) The City supported these allegations with Inspector Hann's signed affidavit averring that he had personal knowledge of the facts contained in the verified complaint and that those facts are true. In addition to Inspector Hann's statements, the City submitted four black and white photocopies of photographs taken on the morning of May 16, 2008. Although the photocopies provide too little contrast between the ground and the objects in the photos—making it so that much of each image appears to be solid black—the City alleged the photos show that "Inspector Hann * * * witnessed inoperable vehicles parked on unimproved surfaces." (R. 13, at 5.) Finally, the City submitted a Name Registration form Ayegbusi filed with the Secretary of State on October 12, 2004, in which he gave the nature of M & M Auto Shop's business as "repairing damaged vehicles." (R. 13, exhibit E.) Based on this evidence, the City contended, it conclusively established that Galli's "current use" violates C.C.C. 3305.01. (R. 13, at 5.)

B. *Galli's Motion for Summary Judgment and Memorandum Contra*

{¶ 15} Through his own motion for summary judgment and a memorandum contra the City's motion, Galli challenged the City's evidence that violations continued after the 2007 Order and presented his own evidence that his "conduct after [April] 2007 was not in violation of the zoning code." (R. 15, at 5.)

{¶ 16} As to the initial violations, although Galli clearly disagreed with the Board's decision upholding the 2007 Order, he also acknowledged that his failure to appeal the Board's holding left him with no grounds to later challenge the 2007 Order. Nevertheless, he claimed, the 2007 Order was not indicative of the property's current use and, thus, had limited evidentiary value in the City's present claim for injunctive relief because Galli "**cured**" those alleged violations by evicting the old tenant, Glory Shipping and Travel. (Emphasis sic.) (R. 15, at 2.)

{¶ 17} In refuting the City's evidence that the violations continued to exist, Galli noted that Inspector Hann never issued another violation order despite his inspections in late 2007, 2008, and 2009. Galli also questioned the City's conclusion that Inspector Hann's observations reveal there are inoperable vehicles on the property, as "[n]o one has inspected the vehicles on this Property * * * [or] even attempted to verify that these vehicles are inoperable." (R. 15, at 12.) Consequently, Galli argued, Inspector Hann's account of his inspections does not establish continuing violations and, instead, amounts to a mere assertion that he saw a large number of cars parked on the property. As to this large number of vehicles, Galli asserted that the presence of the vehicles is consistent with the property's use as a warehouse, since M & M's business is to "obtain[] wholesale vehicles, make[] minor adjustments and then ship[] them out for resale." (R. 15, at 7.)

{¶ 18} Moreover, Galli claimed the photocopies of photographs taken by the City in May 2008, in addition to being "of extremely poor quality," actually support his argument, because two of the images "appear to be photos of a vehicle in the maneuvering area at the front of the warehouse" in conformity with "the intended purpose of a maneuvering area," while the other two images "show vehicles, or bulk inventory, being warehoused in an outdoor storage area on the Property in accordance with the parameters of the 1978 occupancy permit." (R. 15, at 6.) Overall, Galli contended, the photographs "show[] nothing but cars on the lot" and any claims of inoperability are not reliable because an observer "cannot possibly verify, with the naked eye, that these vehicles are inoperable." (R. 15, at 12.)

{¶ 19} In support of his claims that the property is used as a warehouse in conformity with the 1978 occupancy permit, Galli provided two of his own affidavits, an affidavit from Ayegbusi, and several photographs of the property from 2008, 2009, and 2010. *See* Civ.R. 56(E). Galli's January 21, 2010 affidavit asserts the property is "used for the storage of used vehicles," which are "delivered and stored at the Property and then shipped out for resale in Africa"; while at the warehouse, "[m]inor repairs are performed on the vehicles to prepare them for shipment." (R. 11, Jan. 21, 2010 Galli affidavit, at 1-2.) Galli further attested that the property is "not a used car lot or auto service garage," and "[a] consumer cannot buy a vehicle at this Property nor can a customer come to this Property for vehicle repairs." (Jan. 21, 2010 Galli affidavit, at 2.) Finally, Galli stated

"[t]he vehicles on this Property are not salvage materials or junk vehicles and they are not used primarily for parts." (Jan. 21, 2010 Galli affidavit, at 2.)

{¶ 20} In his March 3, 2010 affidavit, Galli reiterates many of his earlier statements, and adds that Ayegbusi and M & M "took occupancy of the Property in January 2008" after Galli evicted "Glory Shipping and Travel [which] was the tenant on the Property at the time of the April 2007 citation that is the basis for the current injunction action." (R. 15, Mar. 3, 2010 Galli affidavit, at 2.) He also explicitly states that M&M "obtains functional vehicles," not junk vehicles. (Mar. 3, 2010 Galli affidavit, at 2.)

{¶ 21} Ayegbusi's March 3, 2010 affidavit corroborates Galli's statements, attesting that M & M "took occupancy of the Property in January 2008" so as to "obtain[] used vehicles, store[] them temporarily in the warehouse on the premises at Ohlen Avenue and then ship[] them overseas for resale." (R. 15, Ayegbusi Affidavit, at 1.) Ayegbusi emphasizes that he "use[s] the property only for warehousing vehicles to be shipped to Africa"; he "does not operate a salvage yard, junkyard, or auto repair shop." (Ayegbusi affidavit, at 2.) Ayegbusi avers that his business "obtains vehicles that are operational and functional," they "are not used for parts" nor are they "salvage materials or junk," and "[t]he only maintenance performed on these vehicles consists of minor adjustments designed to prepare the vehicles for final shipment and resale." (Ayegbusi affidavit, at 2.) In addition, Ayegbusi notes, the "vehicles are wholesale inventory" and "[a] customer cannot buy a vehicle at this Property nor can a customer come to this Property for vehicle repairs." (Ayegbusi affidavit, at 2.)

{¶ 22} Galli additionally provided "photographs of the Property taken * * * in June 2008, March 2009, May 2009, November and December 2009 and January 2010." (Mar. 3, 2010 Galli affidavit, at 2.) On review, the six color images depict various aspects of the property, including several views of the lot adjoining the warehouse. One of the photographs in particular shows approximately 11 vehicles parked on what appears to be a gravel surface; all of the vehicles appear to be well-maintained, with all tires and windows intact and no discernible rust, dents or scratches. In his memorandum contra, Galli asserted that the photos demonstrate "that this Property is a warehouse for fully functional vehicles awaiting shipment to Africa." (R. 15, at 6-7.)

{¶ 23} Furthermore, according to Galli, the fact that the photographs show vehicles parked on what appears to be a gravel surface refutes the City's allegation that he parked vehicles improperly on unimproved surfaces or in unapproved areas.  After noting that the City did not provide a citation to any code section the gravel violates, Galli asserted that the gravel is a valid nonconforming use, even assuming it violates the present code. *See Wooster v. Entertainment One, Inc.*, 158 Ohio App.3d 161, 2004-Ohio-3846, ¶ 45 (9th Dist.), citing *C.D.S., Inc. v. Gates Mills*, 26 Ohio St.3d 166, 168 (1986) ("A nonconforming use of land is a use that was lawful before the enactment of a zoning amendment, but one which, although no longer valid under the current zoning rules, may be lawfully continued.").  Galli claimed "[p]ursuant to 3363.29, attached hereto, effective at the time of the original occupancy permit, gravel [was] a perfectly acceptable material on which to store vehicles under M zoning" at the time of their 1978 Occupancy Permit. (R. 15, at 13.) *See State ex rel. Bailey v. Madison*, 10th Dist. No. 12AP-284, 2012-Ohio-4950, ¶ 15 (the landowner claiming a valid nonconforming use has the burden of proving two requirements: first, the landowner must prove the use was in existence prior to the enactment of the prohibitory land use regulation, and, then, the landowner must show the land use in question was lawful at the time the use was established).  Furthermore, Galli claimed "gravel is still a perfectly acceptable surface on which to store wholesale inventory consisting of vehicles," because, while the code "requires paved surfaces for parking and loading spaces, parking lots and aisles and driveways," "[o]utdoor wholesale storage areas are not included in this requirement." (R. 15, at 13.)

{¶ 24} Based on the foregoing, Galli asserted that his current use of the property conforms to the 1978 occupancy permit and they are not in violation of C.C.C. 3305.01. Accordingly, they contended that, at a minimum, they met their reciprocal burden and established that genuine issues of material fact remain regarding the City's allegations that they "*continued* to use the Property improperly in late 2007, 2008 and 2009 as a[n] auto service garage and used car sales lot; * * * and that they parked vehicles improperly on unimproved surfaces or in unapproved areas." (Appellant's brief, at 6.)  Furthermore, they claimed they affirmatively established that the property did not function as a junkyard or salvage yard, and were entitled to summary judgment on that issue.

C. *Res Judicata*

{¶ 25} The City contended, and the trial court agreed, that Galli's response to its complaint was "barred by the doctrines of *res judicata* and collateral estoppel" pursuant to the Board's 2007 determination. (Emphasis sic.) (R.13, at 3.) Galli, however, points out that the City's July 29, 2009 complaint "alleges that the violations giving rise to the April 20, 2007, order *continued* through late 2007, 2008 and 2009." (Emphasis sic.) (Appellant's brief, at 3-4.) Accordingly, he argues, his "failure to appeal a citation as to conduct that occurred before April, 2007," should not preclude him "from arguing that conduct after 2007 was not in violation of the zoning code." (R. 15, at 5.)

{¶ 26} One of the key factors which must be present for the collateral estoppel branch of res judicata to apply is that the issue in the second action must have been " 'actually and necessarily litigated and determined in a prior action.' " *Progressive Plastics, Inc. v. Testa,* 133 Ohio St.3d 490, 2012-Ohio-4759, ¶ 17, quoting *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112 (1969). The Supreme Court of Ohio has held that it is "an absolute due process prerequisite to the application of collateral estoppel" for the party asserting issue preclusion to prove that the prior action involved the "identical issue [that] was actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 201 (1983), citing *Norwood v. McDonald*, 142 Ohio St 299 (1943). *See also State ex rel. Davis v. Pub. Emps. Retirement Bd.* 174 Ohio App.3d 135, 143-45, 2007-Ohio-6594 (10th Dist.).

{¶ 27} While the sole matter before the Board in September 2007 was whether the property's use, as observed by Hann in April 2007, constituted a violation of the zoning code, the City's 2009 complaint reached beyond the scope of the issues previously litigated in order to introduce the additional matter of alleged ongoing violations occurring beyond April 2007 and Galli's "non-complia[nce]" with the 2007 Order. (R. 1, at 4.) The City argued that an injunction is necessary because Galli "remains in violation of the order issued by code enforcement in 2007" and submitted additional evidence to establish Galli's continued "non-compliance with the Order." The evidence falls short of what is required to prove that the Board determination and the matter herein involved identical issues, as will be explained later in our decision. (Appellee's brief, at 4; R. 13, at 6.) *See Neinast v. Fairfield Cty. Bd. of Trustees*, 5th Dist. No. 2010 CA 011, 2010-

Ohio-5569, ¶ 51 ("The burden of pleading and proving the identity of issues rests on the party asserting the collateral estoppel.").

{¶ 28} The record on review supports Galli's assertion that, while he does not agree with the Board's 2007 decision, he is not challenging that decision or the facts and issues adjudicated therein, but, instead, is responding to the City's allegations of continuing violations with evidence that "there are no current violations of the zoning code occurring on this Property" and the property "d[oes] not continue to operate" in a manner constituting a change of use from the 1978 occupancy permit. (Appellant's brief, at 7.) *Hines v. Kline Eng.*, 116 Ohio App.3d 768, 771 (2d Dist.1996) (Although the res judicata doctrine applied to the decisions of a township board of zoning appeals relating to the grant or denial of variances, the defendant's "claims did not constitute an attack on the variance itself, and thus [were] not barred by the doctrine of *res judicata*."). (Emphasis sic.) Thus, where the City's allegations regarding violations occurring after April 2007 involved facts and issues that were not " 'actually and necessarily litigated and determined in the prior action,' " and Galli's responsive assertion and evidence focuses on "defending * * * against the City's allegations [and evidence] that there were violations after April 2007," the collateral estoppel doctrine does not apply to bar that response. *Progressive Plastics* at ¶ 17, quoting *Whitehead* at 112. (R. 15, at 5.)

D. *Substantive Issues*

{¶ 29} The City further suggested that summary judgment in its favor was appropriate even if Galli's arguments were not barred by res judicata because the "uses admitted to" by defendants prove "there has been a change of use which requires zoning clearance per C.C.C. 3305.01." (R. 13, at 6; Appellee's brief, at 12.) Specifically, the City contended Galli "admit to 'parking vehicles on unimproved surfaces.' " (R. 13, at 5, quoting appellant's Motion for Summary Judgment.) The City further contended that Galli is "admittedly still running an auto shop," citing his statements that M & M "makes 'repairs' to the vehicles it houses, and 'polishes them for resale,' " coupled with the fact that Ayegbusi "runs a business actually called 'M & M Auto Shop,' " and his name registration form filed with the Secretary of State "lists the nature of this business [a]s 'repairing damaged vehicles.' " (Appellee's brief, at 10, 11, 12.)

{¶ 30} Galli responded to the former claim by arguing that they certainly made no such admission, and, despite the fact that the City has never indicated which code section the gravel lot violates, they had provided evidence establishing the gravel qualified as a permissible nonconforming use. Our review reveals the City misrepresented Galli's statement, which reads in full: "Finally, the Complaint alleges that the Defendant is parking vehicles on unimproved surfaces." (R. 11, at 6.)

{¶ 31} To the latter assertion, Galli responded that the "minor repairs" M & M makes to its "wholesale inventory" are consistent with its operation as "a warehouse for the storage of wholesale goods," as opposed to an auto repair shop. (R. 15, at 2.) On appeal, Galli additionally asserts that "the term auto body repair shop suggests that the owner of such an establishment would be engaging in selling his services to repair vehicles owned by third parties," which "is not what happens on this Property." (Appellant's brief, at 12.) Because the zoning code does not define "auto service garage" or "auto repair shop," we find that Galli established a genuine issue of material fact as to whether M & M's activities constitute the operation of such a business. *See Bailey* at ¶ 7, 8 (holding that "when terms are not defined in a zoning regulation, a court should consider the common and ordinary meaning of those terms" and "where there is ambiguity, courts must strictly construe restrictions on the use of real property in favor of the property owner"), citing *In re Appropriation for Hwy. Purposes of Land of Seas*, 18 Ohio St.2d 214 (1969); *Allen v. Cty. Bd. of Zoning Appeals,* 186 Ohio App.3d 196, 2010-Ohio-377, ¶ 16 (2d Dist.), citing *BP Oil Co. v. Dayton Bd. of Zoning Appeals*, 109 Ohio App.3d 423, 432 (2d Dist.1996).

{¶ 32} In the final analysis, the parties' evidence submitted for and against summary judgment provides competing inferences as to whether Galli's use of the subject property beyond April 2007 constitutes a change of use, pursuant to C.C.C. 3305.01, from the 1978 occupancy permit sanctioning the property's use as a "warehouse & office building." (R. 13, exhibit D.) Because a resolution of these issues necessarily would require the court to weigh the parties' evidence and resolve conflicting reasonable inferences, we find summary judgment to be inappropriate for either party in this case. *See Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 121 (1980) (when considering a motion for summary judgment, the trial court may not weigh the

evidence, judge the credibility of witnesses, or select among reasonable inferences). Accordingly, the trial court erred in granting summary judgment to the City on its claims for injunctive relief and a declaration of public nuisance, and Galli's second assignment of error is sustained. The trial court did not err, however, in denying Galli's motion for summary judgment on the specific issue of the property's use as a junkyard or salvage yard, and his first assignment of error is overruled.

## V. Disposition

{¶ 33} Having sustained Galli's second assignment of error and overruled his first assignment of error, we reverse the decision of the Franklin County Municipal Court granting the City's motion for summary judgment, but affirm the court's decision to deny summary judgment to Galli. Accordingly, we remand this matter to the trial court for further proceedings consistent with this decision.

*Judgment affirmed in part,*
*reversed in part, and cause remanded.*

SADLER and CONNOR, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____